UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

B.G. (XXX-XX-7958)                               CIVIL ACTION NO. 09-0685

versus                                                    JUDGE HICKS

COMMISSIONER OF THE SOCIAL            MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

        Plaintiff was born in 1950 and has a high school education. Her past relevant work was as a systems development analyst. She was employed by Mobil Oil from 1977 until she allegedly became disabled in February 1992. Plaintiff applied for disability benefits in 1996, alleging the 1992 onset of disability based on multiple impairments including scoliosis, seizures, headaches, depression, diabetes, hyperthyroidism (Graves' disease) and anemia. Plaintiff's insured status expired December 31, 1998, so she must establish disability on or prior to that date.

        Plaintiff's claim has now been heard and decided by four administrative law judges. ALJ Gold denied the claim in 1998, but this court granted the Commissioner's unopposed motion to remand the case to the agency for further proceedings. A second hearing was held before ALJ Bundy, who also denied the claim. The Appeals Council remanded the case with instructions to seek additional evidence regarding the claim of a mental impairment and to better address Plaintiff's credibility. A third hearing was held before ALJ Nancy Griswold,

who denied the claim based on a finding that Plaintiff could return to her past relevant work despite her limitations. Plaintiff filed written arguments with the Appeals Council, which issued a reasoned opinion that addressed Plaintiff's arguments and concluded that they were not persuasive and did not warrant any change in the ALJ's decision. Plaintiff appealed to this court, which reversed and remanded because the agency decision did not adequately address testimony and other evidence that Plaintiff experienced severe headaches and side effects from medication, including headaches and drowsiness.

ALJ Charles Lindsay held a fourth hearing (Tr. 1091-1139) and issued a written decision. Tr. 727-38. He assessed the claim under the five-step sequential analysis. See 20 C.F.R. § 404.1520. He found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant time. At step two, he found that Plaintiff had the following severe impairments: thyroid disease; depression; cardiac disease; epilepsy; diabetes myelitis; and history of migraine headaches. He found at step three that the impairments did not meet or equal a listed impairment.

The ALJ next determined Plaintiff's residual functional capacity ("RFC"). He found that she had the RFC to perform light work, as defined by 20 C.F.R. § 404.1567(b), except for no more than frequently performing postural activities (but no climbing of ladders); inability to work at unprotected heights or around dangerous moving machinery; no more than frequent reaching, handling, and fingering; moderately reduced ability to understand, remember, and carry out detailed instructions, maintain attention and concentration, deal with

the public, and set goals independently from others; the need to sit/stand at will; and an inability to work in high stress situations. Tr. 733. The ALJ considered testimony from a vocational expert ("VE") at step four and found that Plaintiff was not disabled because she could perform the demands of her past relevant work as a computer systems analyst. He made an alternative step-five finding that Plaintiff could perform other jobs. Tr. 737.

Plaintiff's RFC, as assessed by the ALJ, included an inability to work in high stress situations, and the VE had testified that such a limitation would result in the inability to perform Plaintiff's past job. For that reason, the Appeals Council proposed a decision that corrected the ALJ's step-four finding that Plaintiff could perform her past work as a computer systems analyst. The Appeals Council proposed that the analysis continue to step five, where it would find Plaintiff not disabled based on the VE's testimony that there were other jobs available (cashier II, telephone information clerk, and document preparer) that Plaintiff could perform. Tr. 714-16. Plaintiff objected to the proposed step-five decision, but the Appeals Council issued an unfavorable decision consistent with its proposal. Tr. 702-09. Plaintiff then filed this civil action seeking judicial relief.

**Issues on Appeal**

Plaintiff argues that the Commissioner's decision is erroneous because (1) the ALJ did not properly consider the combined effects of Plaintiff's multiple impairments, (2) the ALJ improperly rejected the opinions of physicians when assessing Plaintiff's RFC; (3) the ALJ erred in finding Plaintiff less than fully credible; and (4) the ALJ erred in finding that

the agency met its burden of showing that there exists alternative work Plaintiff could perform despite her limitations.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Issue 1: Scoliosis and Fibromyalgia**

Plaintiff's first issue on appeal argues that the ALJ did not properly consider the combined effects of all of her impairments because the ALJ did not include scoliosis or fibromyalgia as step-two severe impairments. The Commissioner's brief does not mention the fibromyalgia argument. It does argue that the omission of scoliosis as a severe impairment was a mere procedural or harmless error because Plaintiff has not articulated any additional limitations that would be caused by the scoliosis that would impact her RFC. Plaintiff argues in her reply that failure to identify scoliosis and fibromyalgia as severe impairments lead to a lack of consideration of the limitation caused by her related pain.

The records regarding scoliosis will be reviewed first. A physician at LSUMC saw Plaintiff in connection with treatment for Graves thyroid disease. She noted in her report, "Muscle spasms, contributing to pain with scoliosis that was newly recognized." Tr. 131-32. An impression following X-rays was: "Severe scoliosis with a decrease in the height of the right side of T-12 and L-1, visualization limited but vertebral bodies themselves are probably normal otherwise." Tr. 156. Dr. Don Burt, an orthopedic surgeon, conducted an evaluation of Plaintiff in 1997. He wrote that Plaintiff "has soreness in the low back area on the right and examination reveals a 43 degrees lumbar curvature which is well compensated." He observed that the "scoliosis is the lesser of her problems, and in itself is not disabling for the work that she is doing." Tr. 191. Plaintiff told one evaluator that multiple doctors had told her she had no back problem except one side was longer than the other. Tr. 166. The agency asked Dr. Woodrow Janese to review the medical records and answer interrogatories. He listed the impairments that he found, but he did not include scoliosis. Tr. 783. The ALJ asked Plaintiff at the most recent hearing: "How is your back? Does that bother you still?" Plaintiff answered only, "Yes, sir." There was no further discussion or elaboration about any limitations or problems caused by scoliosis. Tr. 1104.

Plaintiff points out that the three ALJs who reviewed the case in earlier proceedings each found scoliosis was a severe impairment. ALJ Gold found scoliosis was the only severe impairment, but he obviously did not consider it very limiting as he found Plaintiff had the RFC to perform at least medium work. Tr. 16, 18. ALJ Bundy also listed scoliosis among

the severe impairments (Tr. 424), but he wrote that the "scoliosis would preclude her from performing heavy lifting" and assessed an RFC for medium work, subject to some limitations. Tr. 427. ALJ Griswold found that scoliosis was among Plaintiff's severe impairments (Tr. 299), but said with regard to it only that Plaintiff "did experience occasional back pain due to scoliosis and/or menopause, but neither examining physician indicated that this was a significant problem." Tr. 371. She went on to assess an RFC for light work, subject to some limitations.

At step two, deciding whether a claimant suffers from severe impairments, the Fifth Circuit holds that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). ALJ Lindsay, in the most recent decision, recited that standard. Tr. 731. He did not list scoliosis among the severe impairments he found. He did observe that Plaintiff had been "treated sporadically for complaints of back pain, attributed to her scoliosis," but "both examining physicians indicated that the effects of scoliosis were minimal." Tr. 734. He cited in support exhibits that included the records cited above.

The Commissioner does not argue that the scoliosis fails to meet the standard to be a severe impairment. Rather, he argues that even if scoliosis is recognized as severe there are no additional limitations caused by it that would be added to the RFC. Plaintiff suggests the

Page 6 of 19

impact of her related pain would have to be considered, but there is no evidence that Plaintiff has significant back pain stemming from the scoliosis. Plaintiff points to no history of medication or other treatment aimed at addressing back pain. The RFC already includes various limits on postural activities and the need to sit/stand at will, which is a condition often imposed to accommodate back pain much more serious than is suggested by this record. After considering all of the evidence cited by the parties, the undersigned finds that judicial relief is not warranted with respect to this issue.

The fibromyalgia argument is based largely on records from Dr. Mairus McFarland, Plaintiff's primary treating physician. Dr. McFarland saw Plaintiff in December 1997, and Plaintiff complained of pain in multiple areas including her shoulder, neck, lower back, and arms. Dr. McFarland's assessment included chronic musculoskeletal pain secondary to degenerative joint disease and fibrositis. Tr. 376-77. (Fibrositis is a synonym for what is now usually called fibromyalgia.) The record of an examination in February 1998 included an assessment of "probable fibrositis." Tr. 374-75. McFarland examined Plaintiff in October 1998 when she raised multiple complaints of pain in her arm, chest, back, neck, and other places. Tr. 499. Plaintiff returned two days later and complained of multiple trigger points in the shoulder, neck, arm, and chest. Dr. McFarland wrote that Plaintiff had "multiple trigger points consistent with fibrositis," and the remainder of the examine was unremarkable. Tr. 500. Plaintiff reported in October 1998 that a Celestone injection a few days earlier helped relieve joint pain for a few days, but the symptoms returned and were

worse. Dr. McFarland stated that, after carefully talking with Plaintiff, he believed "most of her pain is related to fibrositis." He noted multiple trigger points consistent with fibrositis. He prescribed exercises, diet, and medication. Tr. 371. Plaintiff received a Celestone injection in December 1998 in connection with musculoskeletal pain. Tr. 369. Plaintiff does not cite any other record evidence regarding this condition.

Dr. McFarland completed an RFC assessment in 2004. He indicated that Plaintiff was very limited in her abilities, and he listed his objective findings to support the assessment. He included conditions such as diabetes and hypertension, but he did not mention fibromyalgia or fibrositis. Tr. 632. It does not appear Plaintiff mentioned this alleged impairment in her testimony at the most recent hearing, and there is no indication the ALJs who reviewed this case in the past found this impairment to be severe.

Plaintiff has the burden at step two of the analysis. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005) (claimant bears the burden through the first four steps). The records cited by Plaintiff suggest evidence of possible fibromyalgia that was addressed over several months. Plaintiff accumulated ample medical records in the following years for a host of problems, but she does not cite a diagnosis or treatment for fibromyalgia on those occasions. It appears the issue was temporary or not that problematic. The RFC assessed by the ALJ was limited to mere light work, with several additional limitations. As with the scoliosis, Plaintiff has pointed to some evidence of a fibromyalgia-based impairment, but she has not articulated

any limitations that the record would require be added to her RFC because of pain associated with the condition. Accordingly, there is no reversible error with respect to this issue.

**Issue 2: Opinions of Treating and Examining Physicians**

Plaintiff argues that the agency erred in its assessment of her RFC, particularly by not embracing the opinions of certain treating and examining physicians. Plaintiff begins with a focus on the mental components of her RFC. As noted above, the agency found that Plaintiff had a moderately reduced ability with regard to detailed instructions, maintaining attention and concentration, dealing with the public, and setting goals independently from others. She was found to have no ability to work in high stress situations.

Dr. Robin Rogers performed an evaluation of Plaintiff in 1993. Plaintiff reported a history of depression that had resulted in numerous prescriptions and even hospitalization for a short time. Dr. Rogers wrote that he discussed a treatment plan that included both psychotherapy and medication. Plaintiff postponed psychotherapy due to financial concerns but was followed by Dr. Rogers for medication. There were various changes in medication, which had mixed results. Dr. Rogers checked a box on a form to indicate that Plaintiff was totally disabled, but he went on to write that he had seen Plaintiff only twice at that point, making it difficult for him to predict when Plaintiff might be able to return to work. Tr. 333-37. There is no indication Plaintiff was treated again by Dr. Rogers.

Dr. Julianna Fort, a psychiatrist, began seeing Plaintiff in June 1996 for complaints of depression and related problems. Tr. 150-51. Dr. Fort prescribed various medications,

and her notes include a diagnosis for mood disorder due to temporal lobe epilepsy and thyroidism. Tr. 143-49. Dr. Fort wrote a letter to the state agency in November 1996 that stated her belief that Plaintiff "is mentally impaired to the point she is not functional at work." Tr. 141. There is no indication that, after Dr. Fort wrote that letter, she ever treated Plaintiff again.

Dr. McFarland completed a mental RFC assessment in January 2004. His handwritten comments are largely illegible, and even his checkmarks are confusing because multiple categories are sometimes checked with scribbles added beside them. It appears that Dr. McFarland intended to indicate Plaintiff had fair, poor, or no ability with regard to following work rules, dealing with stresses, maintaining attention and concentration, and the like. Tr. 633-35.

The cited reports are the ones the ALJ focused on when discussing Plaintiff's mental health history. The record also contains a report from neuropsychologist Dr. Ronald Goebel from 1996. Testing shows that Plaintiff had average scores in IQ and memory. She demonstrated, at best, a mild loss of cognitive efficiency, but other testing suggested a "very serious emotional maladjustment that indicated a need for vigorous treatment of depression. Dr. Goebel suggested a psychiatric assessment to determine whether medication for bipolar disorder was indicated. Tr. 503-04.

Plaintiff was evaluated by Dr. Pushpita Pramanik in January 1997. The diagnosis was depressive disorder. Plaintiff stressed that she could not work because of her chronic back

pain and sleep problem, but she said multiple doctors had told her she had no back problem except one side was longer than the other. Dr. Pramanik found that Plaintiff did have depression and was receiving treatment for it. She concluded: "From depression standpoint she may have some limitations but that is really not precluding her from employment 100% at this time." Tr. 164-66.

Plaintiff summarizes the above history, with emphasis on those aspects favorable to her, and argues that the ALJ did not afford proper weight to various reports in fashioning the RFC. Plaintiff does not, however, articulate what mental limitations are specifically required by the evidence that were not reflected in the RFC assessed by the ALJ. That RFC includes a moderately reduced ability with regard to several mental abilities and a finding of the inability to work in high stress situations. It is not as if the ALJ ignored that Plaintiff has mental health problems. He reviewed all the records in great detail, noted the gaps in treatment history, and came to a reasonable conclusion with regard to the limitations imposed by the mental health problems. There were credible evidentiary choices in the record to support how the ALJ weighed and assessed the various competing medical reports, so the decision is supported by substantial evidence.

Mere comments, such as by Dr. Rogers, that Plaintiff was considered disabled, are not controlling. A statement or conclusion by a treating physician that a claimant is disabled or cannot work does not mean that the claimant is disabled for purposes of the Social Security Act; that legal conclusion is for the Commissioner to make. Frank v. Barnhart, 326 F.3d 618,

620 (5th Cir. 2003). What is important is the physician's medical findings and opinions about the claimant's health problems and the particular limitations (standing, reaching, lifting, etc.) they impose. It is the ALJ's duty to then decide whether those limitations render the claimant disabled within the meaning of the law.

Plaintiff next attacks the physical aspects of the RFC. Plaintiff primarily complains that the ALJ improperly afforded substantial weight to the findings of Dr. Woodrow Janese, a neurosurgeon who was appointed to act as an impartial medical expert. The exertional or physical components of the ALJ's RFC are supported by Dr. Janese's report (Tr. 782-92), but the ALJ did not state that he afforded "substantial weight" or any other degree of weight to the report. Rather, he summarized all of the various reports regarding Plaintiff's health. He did not indicate any particular reliance or emphasis on Dr. Janese's report, though the report does support the decision. Plaintiff also picks out a reference to blurred vision and makes a one-sentence complaint that the ALJ did not specifically address it. There is no indication Plaintiff attempted to bring this to the attention of the ALJ, and she does not point to evidence of a vision problem so serious that it would diminish her RFC. Furthermore, mere isolated comments in the record are insufficient to raise a suspicion of non-exertional impairment. Clary v. Barnhart, 214 Fed.Appx. 479, 481 (5th Cir. 2007).

**Credibility Assessment**

Plaintiff raised, on her last appeal to this court, an argument that the ALJ improperly found her less than credible. The court did not reach that issue but, on remand, the Appeals

Page 12 of 19

Council directed the ALJ to further evaluate the subjective complaints and provide rationale in accordance with the regulations and Social Security Ruling 96-7p. Tr. 750-51. The ALJ summarized the evidence and found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC he assessed. The credibility rationale of the previous ALJ's decision was adopted, but the current decision went on to address with specificity the claims of headaches and the side effects of medication, which were the issues that required the court remand. Tr. 735-36.

The ALJ reviewed Plaintiff's testimony about her headaches. He then compared her claims of headaches two or three times a week, sometimes lasting one or two days at a time, to the objective medical history. Plaintiff had been treated occasionally with over-the-counter medication such as Excederin, and she often did not report any problem with migraine headaches when she was evaluated by a physician. The ALJ also observed that Plaintiff had not complained of side effects on a regular and sustained basis. Treating physicians McFarland and Fort did not mention headaches as a problem.

The ALJ nonetheless found that Plaintiff had established a history of complaints of headaches so that it was reasonable to conclude that they resulted in moderate limitations in her ability to handle detailed instructions, maintain attention and concentration, deal with the public, or set independent goals. The headaches were also found to prevent Plaintiff from working in a high stress situation. Tr. 735-37.

Plaintiff complains that the ALJ ignored evidence, such as her excellent work history for 15 years, that favored her credibility, and did not conduct a detailed analysis (as directed by the Appeals Council) or touch on all of the regulatory factors. The undersigned has recommended or granted relief when an ALJ did not make a proper credibility assessment with regard to testimony about a critical limitation or a symptom that was not adequately addressed in the ALJ's decision. The earlier remand is an example. But an ALJ need not specifically address the credibility of each line or component of testimony to withstand judicial scrutiny. See Clary v. Barnhart, 214 Fed. Appx. 479 (5th Cir. 2007) ("The ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility") and Undheim v. Barnhart, 214 Fed.Appx. 448 (5th Cir. 2007) ("An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination").

The ALJ's opinion, as a whole, gives sufficient reasons and documentation for his rejection, with respect to the symptoms listed by Plaintiff, of a degree of limitation greater than reflected in his RFC. The ALJ conducted a detailed analysis of the evidence relevant to the headaches and side effects issues. He did not conduct a line-for-line assessment of every other aspect of Plaintiff's testimony, but Plaintiff has not pointed to any specific testimony that claims a degree of limitation greater than the RFC and that was not fairly assessed in the ALJ's overall credibility assessment in this and the prior, adopted opinion. There is no reversible error with respect to this issue.

Plaintiff makes a related argument that the ALJ did not make a specific assessment of the credibility of Plaintiff's mother, who testified at two of the prior hearings. Lay testimony can be indicative of disability and support a claim, but it is rare to see any significant discussion of the credibility of a non-claimant lay witness in an agency decision. Plaintiff does not cite any authority requiring such an assessment, and there have been cases in which decisions were affirmed despite such a specific discussion. See, e.g. Waters v. Chater, 66 F.3d 323 (5th Cir. 1995) (unpublished) (noting that it was clear the ALJ considered a medical source's testimony more credible than that of the claimant's husband). Plaintiff also does not point to any particular testimony from her mother that went beyond the typical family member affirmation or corroboration of the claimant's testimony. Plaintiff has not established a basis for reversal with respect to this issue. See Clary, 214 Fed. Appx. at 482 (claimant did not identify any particular testimony that was discredited or articulate prejudice stemming from the ALJ not addressing each regulatory factor).

**Other Jobs**

At step five, the Appeals Council looked to the testimony of the VE and found that there were three representative jobs that Plaintiff could perform despite her impairments. Those jobs were cashier II, telephone information clerk, and document preparer. Plaintiff argues that, even assuming the validity of the assessed RFC, she could not perform the demands of cashier II or telephone information clerk. She reasons that those jobs are described in the Dictionary of Occupational Titles as requiring significant contact with

others, and her RFC included a *moderately* reduced ability to deal with the public or maintain attention and concentration.

The ALJ asked the VE to assume certain limitations, including that the claimant was moderately limited in certain respects. He explained that moderate "means that there are more than slight limitations but the person can still perform the task satisfactorily." Tr. 1129. Plaintiff's argument to the court implies that a finding of a moderate limitation reflects a greater degree of limitation than the description given by the ALJ.

Several Plaintiffs have argued that the definition of moderate that was employed in this case is at odds with the regulations or other agency guidelines. The undersigned has denied or recommended denial of relief based on this argument in a number of cases. Some of the plaintiffs appealed, and the Fifth Circuit affirmed in each case. See e.g. Cantrell v. McMahon, 227 Fed.Appx. 321(5th Cir. 2007); Zills v. Barnhart, 220 Fed.Appx. 289 (5th Cir. 2007) and Beene v. McMahon, 226 Fed.Appx.348 (5th Cir. 2007). The undersigned reasoned in those cases that the critical step-five issue is not the precise definition of moderate under the regulations but how the ALJ defined the term for the VE and whether the VE knew that was the degree of limitation she was to assess.

As in Cantrell and the other cases, there is no indication that the VE in this case relied upon a definition of moderate other than what the ALJ stated. Rather, she answered the ALJ's questions based on a definition that he provided her to explain what he meant by a moderate limitation. Thus, there is no step five error. Plaintiff's argument is really more of

an implied attack on her RFC, which was discussed above. The undersigned found that there was substantial evidence to support the ALJ's assessment, and the record does not require a finding of severity of her mental limitations that is significantly greater than the moderate limitation found by the ALJ.

Plaintiff also points out that when her counsel asked the VE to consider the impact of additional limitations, such as frequently missing work or the need for additional breaks, the VE said Plaintiff would be incapable of employment. Those additional limitations were urged by Plaintiff, but the ALJ did not find they were part of her RFC, so the VE's testimony in response to those questions is not relevant. Thus, there is no basis for judicial relief with respect to this final issue.

**Conclusion**

In a case with such a long and multi-faceted medical record, there will always be some evidence that is not specifically discussed in the Commissioner's decision. Similarly, there will almost always be some regulatory factor or procedure that can be found in the complex set of disability regulations that arguably should have been discussed or performed in a better or different way. But "[p]rocedural perfection in administrative proceedings is not required." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988). The court should not vacate a decision based on a potential procedural flaw unless the substantial rights of a party have been affected. Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989). The policy underlying this harmless error rule is to preserve judgments and to avoid waste of time. Id.

The agency has reviewed this case multiple times and at multiple levels. The decision, as it currently stands, is based on a fair and reasonable assessment of the record and the several issues. Plaintiff has done a good job of pointing out every conceivable area for improvement in the decision or where the evidence arguably supports a different result. But none of the areas for improvement affect Plaintiff's substantial rights. As for conflicts in the evidence, they are for the ALJ to resolve and must be affirmed if there are credible evidentiary choices to support them. There were such choices available to the ALJ, as outlined above.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be affirmed and that Plaintiff's complaint be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 22nd day of July, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE